231 P.2d 414

**O'NEILL v. MEYER et al.**

No. 5386.

Supreme Court of New Mexico.

May 4, 1951.

W. Peter McAtee, Albuquerque, E. P. Ripley, Santa Fe, for plaintiffs in error.

Joe L. Martinez, Atty. Gen., Walter R. Kegel, Asst. Atty. Gen., for defendants in error.

COMPTON, Justice.

The question is whether Laws of 1941, Chap. 202, Sec. 55–1111, 1941 Comp., as amended, requiring governing boards of school districts on or before the closing day of each school year to serve written notice on classroom teachers of their reappointment or dismissal, includes the Girls' Welfare Board. Otherwise stated, is the Girls' Welfare Home a school district within the contemplation of the act?

The act, as amended, reads: "On or before the closing day of each school year the *governing board of each school district* in the state whether *rural, municipal* or *otherwise,* shall serve written notice upon each class room teacher certified as qualified to teach in the schools in the state and by it then employed giving written notification of reemployment or dismissal. * * " Laws of 1949, Chap. 89. (Emphasis ours.)

An application was made by appellants to the district court for a writ of mandate to require the appellee board to reinstate them as teachers in the institution and to recover salary due them since their dismissal. The alleged facts are:

"That on or about the 13th day of July, 1950, your petitioners, without cause, notice or hearing, were summarily dismissed as teachers of the New Mexico Girls' Welfare Home; * * * "

"That Bertha O'Neill is a duly accredited and qualified teacher and holds a five-year high school certificate from the New Mexico State Board of Education; that she has been employed as a full-time teacher of the New Mexico Girls' Welfare Home since on or about the 1st day of February, 1944, with a salary of Two Hundred Twenty-two and 08/100 Dollars ($222.08) per month plus a one per cent (1%) bonus for each year served and her noon-day meals; that during the period of her employment as a teacher for the New Mexico Girls' Welfare Home, she has principally taught English, Spanish and Social Sciences."

"That Luetta M. Chaplin is a duly accredited and qualified teacher and holds a lifetime Master elementary certificate and a five year high school certificate from the New Mexico State Board of Education;

that she has been employed as a full-time teacher at the New Mexico Girls' Welfare Home since on or about the 1st day of September, 1943, with a salary of Two Hundred Thirty-seven Dollars ($237.00) per month plus a one per cent (1%) bonus for each year served and her noon-day meals; that during the course of her employment, she principally taught the seventh and eighth grades, and English and History in high school."

"That the Board of the New Mexico Girls' Welfare Home in discharging Luetta M. Chaplin and Bertha O'Neill as teachers of the New Mexico Girls' Welfare Home did not conform to the provisions of Sections 55–1111 and 55–1113, New Mexico Statutes Annotated, 1941 Compilation, or for reasons reflecting upon their ability as teachers, moral conduct or classroom performance."

"That two former teachers of the New Mexico Girls' Welfare Home, namely, Ruth MacLaughlin and Beryl Heard, were granted and are receiving the full benefits of the Teachers' Retirement Act."

"That Bertha O'Neill and Luetta M. Chaplin presented themselves to the respondent Board on the beginning day of the fall school term, 1950, at the New Mexico Girls' Welfare Home, and were ready, willing and able to perform their duties as teachers, but were denied such employment; that Bertha O'Neill and Luetta M. Chaplin

have, since on or about the 1st day of September, 1950, endeavored to secure employment as teachers with the Albuquerque Public School System, but have been unable to secure such employment."

"That the New Mexico Girls' Welfare Home receives a substantial portion of its funds through the Albuquerque Public Schools System, pursuant to Section 55–637, New Mexico Statutes Annotated, 1941 Compilation, and subsequent sections."

Appellee moved for a dismissal of the case on the ground that a cause of action was not stated. The case was tried upon the pleadings with the result the court entered an order quashing the writ theretofore issued and from such order, appellants bring the case here for review.

We are of the opinion that the trial court correctly resolved the question. Under no reasonable construction can we say that the Girls' Welfare Board is a governing board of a school district. While the institution carries on an educational program, its inmates are not students in the sense that they are attending public schools. Plainly, the section relates to public schools only.

Many considerations enter into this conclusion. The purpose of the Girls' Welfare Home is defined by Chap. 36, Laws of 1931, as "An Act Designating the Girls' Welfare Home at Albuquerque, New Mexico, a State Corrective and Reformatory Institu-

tion." Its board is composed of five members (women) appointed by the Governor, and attendance is limited to juveniles. Conversely, the purpose of boards of education is not reformation but education, and the public schools are open to all of school age. In rural districts there is a county board of education with a board of directors. In municipal districts there is a municipal board, chosen by the electors of the municipality. Such dissimilarity does not lend support to a legislative intent that the Girls' Welfare Home is a school district, as contended.

 It is asserted that the word "otherwise" appearing in the act, may reasonably include the Girls' Welfare Home. We do not so appraise it. Possibly the word "otherwise" embraces independent and union high school boards, but it cannot be extended to institutional boards.

 Appellants also cite Laws of 1941, Chap. 125, §§ 55–637, 55–644, 1941 Comp., as amended, as indicating an intent to make the home a school district. The sections read:

"All moneys received by the county treasurers of the several counties from the 'state public school equalization fund', other than for transportation purposes as herein provided, shall be distributed to each school administrative unit within the county in the proportion that the approved maintenance budget of each of such school administrative units bears to the total approved maintenance budget of all said units. New Mexico Industrial School, and Girls' Welfare Home shall be *treated* as school districts within the county in which they now or hereafter may be located * * *."

"The New Mexico Industrial School (sometimes called New Mexico Reform School), and Girls' Welfare Home shall for the purposes of this chapter be *treated* as school districts and shall participate in the 'State Public School Equalization Fund' as if they were in fact school districts, except that they shall receive no allowance on account of school bus transportation costs. Their participation in said fund shall be based upon average daily attendance, weighted as hereinabove provided. All students receiving instruction in New Mexico Industrial School, and Girls' Welfare Home shall for the purpose of this act be considered high school pupils. * * *" (Emphasis ours.)

As we construe the sections, the use of the word "treated" negatives an intent to include the institution as a school district. Its treatment as such is limited merely to receiving public funds.

 It is next claimed that the Laws of 1947, Chap. 74, § 55–1114, 1941 Comp., an act relating to retirement of teachers and institutional employees, bears upon the question. The act reads: "The board of education of any municipality, county, independent school district, union high school

district, the state retirement board, the state board for vocational education or the board, of regents or other governing body of each of the state educational institutions mentioned in section 11 of article 12 of the Constitution of New Mexico, and including the Eastern New Mexico Normal, the museum of New Mexico, the Girls' Welfare Home at Albuquerque, New Mexico, and the New Mexico Industrial School, desiring to participate in this retirement plan, shall, upon request of any employee entitled to the benefits of this act, * * *."

Plainly, the act relates to the retirement and emeritus status of educational and institutional personnel. That such designated institutions are covered by the retirement act is conceded, but it does not follow that their employees are entitled to the benefits of "tenure". "Tenure" and "retirement" are unrelated subjects. Noticeably, the State Museum is included in the retirement act.

In our opinion, the intent of Chap. 202, Laws of 1941, is so clearly expressed that we find no room for the office of construction. Any other conclusion would deny a plain legislative intent.

The judgment should be affirmed and it is so ordered.

LUJAN, C. J., and SADLER and McGHEE, JJ., concur.

COORS, J., not participating.